Submitted May 30, 2019; convictions on Counts 1, 2, and 3 reversed and remanded for entry of judgment of conviction on one count of first-degree sexual abuse, remanded for resentencing, otherwise affirmed February 3, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFREY LEE LASHESKI,
*Defendant-Appellant.*

Deschutes County Circuit Court
15FE0442; A165490

481 P3d 966

Defendant appeals a judgment of conviction for three counts of first-degree sexual abuse. On appeal, defendant argues that the trial court erroneously failed to merge the three counts of sexual abuse. Merger of multiple counts of the same crime is required when there is not "a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." ORS 161.067(3). *Held*: Although the evidence demonstrated the defendant touched victim on different parts of her body, he did so over an indeterminate period of time and with no proven break in his continuing act of aggression. *See State v. Nelson*, 282 Or App 427, 444, 386 P3d 73 (2016). Any pause demonstrated in the record was not legally sufficient to avoid merger of the three counts of first-degree sexual abuse.

Convictions on Counts 1, 2, and 3 reversed and remanded for entry of judgment of conviction on one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

Walter Randolph Miller, Jr., Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Convictions on Counts 1, 2, and 3 reversed and remanded for entry of judgment of conviction on one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

**HADLOCK, J. pro tempore**

Defendant sexually assaulted the 12-year-old daughter of a woman with whom he had a long-standing friendship. On appeal from a judgment of conviction for three counts of first-degree sexual abuse, defendant raises three assignments of error, challenging (1) the admission of certain uncharged-misconduct evidence at trial, (2) the trial court's refusal to merge the three counts of sexual abuse, and (3) the sentence imposed on those convictions, which includes a 75-month incarceration term on each of the three counts, all to run concurrently. In a supplemental assignment of error, defendant argues that his convictions must be reversed because the trial court instructed the jury that ten guilty votes would be sufficient to support a guilty verdict. He acknowledges, however, that the verdicts in this case were all unanimous. We reject defendant's first assignment of error without discussion. We reject defendant's supplemental assignment of error for the reasons set out in *State v. Ciraulo*, 367 Or 350, 478 P3d 502 (2020). For the reasons set out below, however, we conclude that the trial court erred when it failed to merge the three counts of sexual abuse. Accordingly, we reverse the convictions, remand for entry of a judgment of conviction on a single count of first-degree sexual abuse, and remand for resentencing. Because that resolution of the second assignment of error requires resentencing, we do not reach defendant's third assignment of error.

As this opinion focuses on defendant's argument that the trial court erred when it refused to merge the three counts of sexual abuse, we discuss only those aspects of the evidentiary and procedural record that are pertinent to that challenged ruling. We are bound by the trial court's factual findings so long as constitutionally adequate evidence in the record supports them. *State v. Ortiz-Rico*, 303 Or App 78, 84, 462 P3d 741 (2020). Because defendant was convicted, "we state the facts underlying the trial court's rulings in the light most favorable to the state; that is, in the light most favorable to the trial court's conclusion that merger was not required." *Id.* at 80 (citation and internal quotation marks omitted). We review the trial court's ultimate ruling on merger for legal error. *Id.* at 84.

Defendant and the victim's mother have known each other for many years. The victim, who was 16 years old at the time of trial, testified that defendant had been like a father figure to her while she was growing up. Defendant, the victim, and her mother sometimes engaged in outdoor activities together, and defendant and the victim also did things on their own, like camping on weekends.

The last time that defendant and the victim went camping together was when the victim was 12 years old. The victim testified that she and defendant shared a tent that they set up on a hill "basically in the middle of nowhere." At some point during the night, the victim woke up and defendant "was touching" her. The victim "didn't really think much of it because [she] was tired" and she "wouldn't want to think about what *** someone [she] cared about and someone that [she] trusted with [her] life." The victim woke a few times and then "finally woke up and realized well, this is actually happening." Defendant "was still doing that" when she woke up. She tried to roll away from defendant "a few times," but he pulled her back. The victim did not show defendant that she was awake because she "didn't know what he would do if he knew that [she] knew" what was happening.

The victim also testified about the specific ways in which defendant sexually abused her that night. At one point, defendant rubbed the victim's vaginal area and then, "when [she] turned over he put his hands underneath [her] pants and touched [her] backside." Defendant also touched the victim's breasts with his hands. After the victim described that sexual abuse, the prosecutor asked what else defendant had done, and the victim responded, "He played with my backside and my front," stating that defendant was "rubbing [her vaginal area] still" and "[m]essing and rubbing it with his hands." The victim felt sad, upset, and confused; she trusted defendant and loved him, and she did not understand "why he would do this."

After an hour or two, the touching stopped when defendant left the tent to relieve himself. When defendant came back to the tent, the victim told him that she had just woken up and that she wanted to sleep in defendant's car

because she was cold and scared of things outside. The real reason she went to sleep in the car was because she "didn't want it to happen again." Defendant took the victim home the next day. The victim told her stepfather and a family friend some of what had happened and the police were called.

Defendant eventually was charged with three counts of first-degree sexual abuse (Counts 1, 2, and 3) and two counts of second-degree unlawful sexual penetration (Counts 4 and 5). Each count of sexual abuse alleged that defendant had unlawfully subjected the victim to sexual contact by touching a sexual or intimate part.[1] The charges differed only with respect to which part of the victim's body defendant was alleged to have touched: Count 1 alleged that defendant touched the victim's breasts; Count 2 alleged that he touched her vaginal area; and Count 3 alleged that he touched her buttocks. The indictment later was amended by interlineation to indicate that all alleged conduct was of the same or similar character, or was based on the same act or transaction, or was based on multiple acts or transactions that were connected or constituted part of a common scheme or plan.

The case was tried to a jury, and the state dismissed one count of unlawful sexual penetration after it rested its case. The jury convicted defendant on the three counts of sexual abuse and acquitted him of the remaining count of unlawful penetration.

In conjunction with sentencing, defendant argued that the three counts of sexual abuse should merge into a single conviction because all of his criminal conduct occurred during a single episode without a "sufficient pause," the unlawful conduct stopped when defendant left the tent to relieve himself, and the conduct "constitute[d] an uninterrupted criminal act for which one conviction is required by

---

[1] ORS 163.427(1)(a)(A) defines the crime of first-degree sexual abuse to include the act of subjecting another person to sexual contact when that person "is less than 14 years of age." The term "sexual contact" is defined as "any touching of the sexual or intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

law." In response, the state emphasized the victim's testimony that she fell asleep and awoke more than once during the sexual assault, rolling away from defendant, and the state argued that those periods of sleep and rolling away separated the three acts of sexual abuse, allowing for entry of a separate conviction for each count.

The trial court denied defendant's request to merge the counts, ruling that the record included "evidence to demonstrate a sufficient pause for [defendant] to reconsider and renounce his criminal intent between acts" and that defendant nonetheless chose, instead, to move from touching one part of the victim's body to another part. The court emphasized its view that the victim's action in rolling away communicated something to defendant and gave him "an opportunity to reconsider his behavior in that moment." The court imposed a sentence that includes 75 months of incarceration on each of the three counts of sexual abuse, to run concurrently.

On appeal, defendant argues that merger of the three counts of sexual abuse was required because the record does not include evidence "that defendant's acts of touching were discrete acts—*i.e.*, [that] all of the touching of complainant's vagina occurred, followed by a meaningful pause, followed by touching of a different body part." That is, defendant asserts, merger was required because his "three acts of sexual contact constituting sexual abuse all occurred in the same location, without interruption and without a proven pause in [his] aggression."

In response, the state acknowledges that the question is "close," but it argues that the victim's description of what had happened was sufficient to support the trial court's determination that "there was a sufficient pause between the three acts of sexual contact" so that merger was not required. In particular, the state emphasizes that the sexual contact lasted for more than an hour, leading the victim to wake up at various times, and how, "after [the victim] was fully awake she would turn away from defendant but he would pull her back next to him and then begin to touch a different body part." The state contends that those "different acts of turning away were significant in that they

stopped the touching and implicitly communicated to defendant the victim's wish he not do so again, and they provided him an opportunity to do so."

Fundamentally, both parties' arguments are based on ORS 161.067(3), which provides, in part:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a *sufficient pause* in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

(Emphasis added.)[2] Thus, when ORS 161.067(3) applies, criminal charges based on multiple violations of the same statutory provision will not merge if a "sufficient pause" separates those violations.

For purposes of ORS 161.067(3), a "pause" occurs between two statutory violations only if the defendant's commission of one violation ends before the second violation begins. *Ortiz-Rico*, 303 Or App at 85. For that pause to be deemed "sufficient," it must have been "so marked in scope or quality that it afford[ed] a defendant the opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). The pause may have been only "temporary or brief," *id.*, but it must have given the defendant an opportunity to renounce his intention to commit the particular crime that followed the pause. *State v. West-Howell*, 282 Or App 393, 400-01, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017). In determining whether a "sufficient pause" occurred, a court must consider the evidence regarding the duration of any pause, what happened during the pause, and whether the defendant's criminal conduct was "qualitatively different" before and after the pause.

---

[2] ORS 161.067 was amended after defendant engaged in the conduct that is the subject of this appeal. However, because those amendments do not affect our analysis, we refer to and quote the current version of the statute in this opinion. *See Ortiz-Rico*, 303 Or App at 84 n 9 (taking same approach).

*Ortiz-Rico*, 303 Or at 85, 89; *see also State v. Bradley*, 307 Or App 374, 380-81, 477 P3d 409 (2020) (discussing cases).

Applying those principles to this case, we conclude that no evidence in the record supports a determination that a "sufficient pause" separated defendant's three acts of sexual abuse. It is important to keep in mind that each of the three counts of sexual abuse was predicated on defendant having unlawfully touched a different sexual or other intimate part of the victim's body: Count 1 related to the touching of the victim's breasts; Count 2 related to her vaginal area; and Count 3 related to her buttocks. The question, therefore, is not whether there were *any* pauses during defendant's sexual assault of the victim. What matters for the merger analysis is whether a "sufficient pause" separated the specific acts on which the charges are based. *West-Howell*, 282 Or App at 400-01; *see also State v. Nelson*, 282 Or App 427, 444, 386 P3d 73 (2016) (in considering whether counts of sexual abuse should merge, court was "limited to examining whether there was a sufficient pause between the acts of *sexual contact* that led to the guilty verdicts for *sexual abuse*"; evidence of the defendant's actions while he committed other crimes were not material to the analysis (emphases in original)).

We begin by discussing the guilty verdict on Count 1, which is supported by the victim's testimony that defendant touched her breasts during the episode in the tent. The victim also said that the entire abusive episode lasted more than an hour. However, the record in this case contains no evidence about when, during that episode, defendant touched the victim's breasts. Moreover, the victim did not testify whether that touching occurred before or after—or at the same time that—defendant touched her other intimate parts; nor did she describe any events that may have separated those acts of touching. Given the lack of evidence that defendant's touching of the victim's breasts was separated from his other abusive acts "by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent," ORS 161.067(3), the guilty verdict on Count 1 should have merged with the verdicts on the other two counts.

We turn to Counts 2 and 3. The victim testified generally that defendant repeatedly touched her during the episode in the tent, that she repeatedly woke up to find him still touching her, and that she rolled away from him in an effort to get him to stop. The victim also testified specifically that defendant touched her vaginal area and her buttocks, explaining that defendant "was rubbing [her vaginal area] and then when [she] turned over he put his hands underneath [her] pants and touched [her] backside," also rubbing that intimate part. After the victim described that sexual abuse, as well as defendant's touching of her breasts, the prosecutor asked what else defendant had done, and the victim responded, "He played with my backside and my front." She specified that defendant was "rubbing [her vaginal area] still" and "[m]essing and rubbing it with his hands."

That evidence supports the jury's guilty verdicts on Counts 2 and 3, showing that defendant sexually abused the victim both by touching her vaginal area and by touching her buttocks. However, it is not enough to demonstrate the existence of a "sufficient pause" between the touching of the two intimate parts. True, the victim's testimony that defendant was "still" rubbing her vaginal area at one point would support a finding that defendant abused her in that specific way over a long period of time, or perhaps repeatedly, during the criminal episode. But the victim's testimony that defendant was "still" touching her vaginal area at some unspecified time does not support any finding about the temporal relationship between that act (or those actions) and the other sexual abuse to which defendant subjected her.

On that point, the strongest evidence in the record is the victim's testimony that, at some time during the episode, defendant rubbed her vaginal area and then, "when [she] turned over he put his hands underneath [her] pants and touched [her] backside." That testimony does show a sequence of abusive acts. It is not sufficient, however, to establish the existence of a pause between those acts that was "so marked in scope or quality that it afford[ed] a defendant the opportunity to renounce his or her criminal intent." *Huffman*, 234 Or App at 184. First, the testimony does not indicate anything about how much time elapsed from when the victim rolled over, trying to escape the touching of her

vaginal area, and when defendant started rubbing her buttocks. Thus, the record does not provide evidence of a pause of such duration that it would give defendant an opportunity to renounce his criminal intent.

Nor does the evidence suggest that any event of "marked *** quality", *id.*, separated the abusive acts. It is not surprising that a victim of sexual assault might move during the attack, attempting to escape it and communicating her desire that it stop. If *additional* circumstances give a defendant an opportunity to renounce his criminal intent, a victim's escape attempt can contribute to the finding of a sufficient pause. *See, e.g.*, *Ortiz-Rico*, 303 Or App at 88-89 (holding that sufficient pause occurred between two rapes of one victim based on evidence beyond the victim's escape attempt, including temporal breaks, the defendant's movement of the victim from the front seat to the back seat of the car in which he repeatedly raped her, the defendant's movement of physical items, and the victim's communication of facts that contributed to making the second rape qualitatively different from the first). However, the mere fact that a victim moves slightly in an attempt to end an assault is not enough, by itself, to constitute a "sufficient pause" that will prevent merger. *See State v. Campbell*, 265 Or App 132, 138-39, 333 P3d 1220 (2014) (victim's unsuccessful attempt to escape through the door of the truck in which the defendant was physically assaulting her did not create a "sufficient pause"). That is true even when, as here, that escape attempt or other actions by the victim expressly or implicitly communicate a desire for the defendant to stop an attack and the defendant nonetheless continues. *See id*. at 135 (the victim's attempt to escape the truck did not establish a "sufficient pause" even though the defendant responded by pulling the victim back into the truck, locking the doors, and continuing his aggression); *see also Nelson*, 282 Or App at 444, 447 (merger required where acts of sexual abuse occurred sequentially over a brief period of time, in a confined space, without any interruption by a significant event, and without a pause in the defendant's aggression, even though the defendant had asked the victim, in the midst of the assault, whether she wanted him to stop and she had said yes).

In sum, the record does not support a determination that a pause of "marked scope or quality" separated the acts of sexual abuse that form the basis of Counts 2 and 3: defendant's touching of the victim's vaginal area and his touching of her buttocks. The trial court should have merged the guilty verdicts on all three of those counts into a conviction for a single count of first-degree sexual abuse.

Convictions on Counts 1, 2, and 3 reversed and remanded for entry of judgment of conviction on one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.