On appellant's motion to dismiss filed on March 11, motion to dismiss appeal denied with leave to file a new motion to dismiss within 14 days of publication of this opinion June 30, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFREY LEE LASHESKI,
*Defendant-Appellant.*

Deschutes County Circuit Court
15FE0442; A165490

493 P3d 1118

Defendant seeks a post-opinion dismissal of his appeal from a criminal conviction of three counts of sexual abuse. In the Court of Appeals' previous opinion on defendant's appeal, the court determined that the three counts of conviction should have been merged, which required resentencing. *State v. Lasheski*, 309 Or App 140, 150, 481 P3d 966 (2021). In this motion for dismissal, defendant argues that resentencing would provide no legal benefit, since he would likely be sentenced to the same 75-month prison term, but would likely impact his current employment and prison location within the Oregon Department of Corrections. *Held*: Post-opinion dismissal of appeals are generally disfavored to prevent appellants from escaping the legal consequences of appeals. In a limited set of cases, the practical considerations may present a compelling justification for such dismissal. However, defendant has not presented evidence or legal authority sufficient to overcome the presumption against post-opinion dismissal in this case.

Motion to dismiss appeal denied with leave to file a new motion to dismiss within 14 days of publication of this opinion.

Walter Randolph Miller, Jr., Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, for motion.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Motion to dismiss appeal denied with leave to file a new motion to dismiss within 14 days of publication of this opinion.

**HADLOCK, J. pro tempore.**

Once again, we are called on to address a circumstance that we most recently discussed in *State v. Moore*, 308 Or App 724, 482 P3d 222 (2021). That circumstance, which seems to be arising with increasing frequency in criminal appeals, occurs when the defendant-appellant files an unopposed motion to dismiss the appeal after our opinion has issued. We explained in *Moore* that, once the court's opinion has issued, our decision whether to grant such a dismissal motion is discretionary. *Id*. at 727. We held that "a motion to dismiss an appeal filed by the party who initiated the appeal, and prevailed on appeal, is disfavored, absent a compelling explanation," and we outlined factors that may influence our decision whether to grant such a motion:

> "First, we consider the reasons given for dismissal. Settlement among the parties is always encouraged. Motions that are the result of a joint settlement of the dispute, not just on appeal, but globally, will weigh in favor of granting the motion to dismiss. \*\*\* Second, we consider the court resources affected by our decision. Third, we consider whether, given the issues and reasoning expressed in the opinion, granting dismissal prior to issuance of the appellate judgment and thereby failing to enforce our decision, would affect public confidence in the judicial system. Fourth, we consider the effect, if any, that failing to enforce our decision by appellate judgment would have on a crime victim's right to be present at a hearing under Article I, section 42(a), of the Oregon Constitution."

*Id*. at 728. We did not describe those factors in more detail in *Moore* because the appellant had given no reason for seeking post-opinion dismissal of his own appeal. In the absence of such an explanation, we denied the motion. *Id*.[1]

In this case, too, defendant-appellant seeks post-opinion dismissal of his appeal. And in this case, as in *Moore*, the state does not oppose that motion—although the motion does not reflect a settlement among the parties.[2] We take

---

[1] The *Moore* appellant later sought reconsideration, spelling out the reasons he wished to dismiss his appeal. We resolved that petition for reconsideration by unpublished order.

[2] We observed in *Moore* that settlements are "always encouraged" and stated that motions "that are the result of a joint settlement of the dispute, not just on

the opportunity to explain in more detail why such motions are disfavored and will be granted only when the appellant presents a compelling reason for dismissal. We also explain why, as a general rule, we will not dismiss appeals in which our opinion granted meaningful relief to the appellant in a form that the appellant requested, but which has possible adverse legal consequences that the appellant now seeks to avoid. Thus, we generally will grant an appellant's unopposed post-opinion dismissal motion only in a narrow category of cases: those in which dismissal (1) would not allow the appellant to avoid possible adverse *legal* consequences of the issues that the appellant chose to raise on appeal, and (2) would allow the appellant to avoid only certain, undesired *practical* effects of the relief granted on appeal, sometimes related to the appellant's particular circumstances in the custody of the Oregon Department of Corrections (ODOC). In this case, we deny defendant's motion to dismiss the appeal. However, we grant defendant leave to file a new dismissal motion, if he desires, so that he may address the matters discussed in this opinion.

To provide context for our discussion of the pertinent principles, we review what happened in this appeal before defendant filed his dismissal motion. Defendant was charged with three counts of first-degree sexual abuse and two counts of second-degree unlawful sexual penetration. *State v. Lasheski*, 309 Or App 140, 144, 481 P3d 966 (2021). The state dismissed one of the unlawful sexual penetration charges after it rested its case, and the jury convicted defendant of the three counts of sexual abuse and acquitted him of the remaining count of unlawful sexual penetration. *Id*. at 144. At sentencing, the trial court imposed a 75-month term of incarceration on each of the three counts of sexual abuse and ordered those terms to run concurrently. *Id*. at 142.

Defendant appealed, ultimately raising four assignments of error. *Id*. First, defendant challenged the admission

---

appeal, but globally, will weigh in favor of granting the motion to dismiss." 308 Or App at 728. However, neither *Moore* nor this case involves a settlement.

Another similarity between this case and *Moore* is that the appellant has not asked in either case that we vacate our published opinion. *See Moore*, 308 Or App at 728 n 1 (noting that *vacatur* is considered an "extraordinary remedy").

of certain uncharged-misconduct evidence at trial. *Id*. Defendant asserted that, if he prevailed on that argument, we should reverse his convictions and remand for a new trial.

Second, defendant challenged the trial court's refusal to merge the three counts of sexual abuse into a single conviction. *Id*. If he prevailed on that argument, defendant asserted, we should "vacate [his] sentence and remand for resentencing."

Third, defendant argued that the 75-month prison term—a sentencing term required by ORS 137.700—was unconstitutionally disproportionate. Again, defendant argued that, if we agreed, we should vacate the sentence and remand for resentencing.

Fourth, in supplemental briefing, defendant argued that we should reverse his convictions "because the trial court instructed the jury that ten guilty votes would be sufficient to support a guilty verdict," although he acknowledged that the verdicts in his case were all unanimous. *Id*. at 142.

In resolving defendant's appeal, we started by addressing his first and fourth arguments because he would get the most "complete relief" if he prevailed on either of them, that is, reversal of his convictions and remand for new trial (instead of merely remand for resentencing). We rejected the evidentiary argument without discussion and summarily rejected the supplemental assignment of error based on a recent Oregon Supreme Court decision. *Id*.

We then turned to the merger argument, which was the main focus of the written opinion, explaining why we agreed with defendant that the trial court erred when it refused to merge the three counts of sexual abuse. Accordingly, we granted the relief that defendant had sought: reversal of the three sexual abuse convictions and remand for resentencing, to include entry of a judgment of conviction on a single count of first-degree sexual abuse. *Id*. at 150. Because we had already determined that a remand for resentencing was necessary, we did not reach

defendant's argument that the 75-month sentence imposed by the trial court was unconstitutionally disproportionate. *Id*. at 142.

Our decision in *Lasheski* issued on February 3, 2021, approximately two and one-half years after defendant had filed his appellate brief (which raised the merger argument, with the associated request for a remand for resentencing) and eight months after he had filed his supplemental brief. Several weeks after *Lasheski* issued, defendant moved to dismiss his appeal, providing the following explanation of why he wanted dismissal and, relatedly, to avoid a remand for resentencing:

> "This court's decision will have a practical effect of reducing defendant's criminal history score from gridblock A to gridblock D. Notwithstanding that benefit, after consulting with appellate counsel, defendant has requested that counsel move to dismiss his appeal. Defendant explains the reasons for his request as follows: '(1) [Resentencing] will change nothing other than my criminal classification, at 63 years old when I am due to get out I won't have much of a work history future to worry about; (2) I have no plans to have future contact with the law; (3) there is no reason to spend any more time or resources on my case since it will not change the final result.' Defendant also stated that he is employed full time at Deer Ridge Correctional Institution, and he feels comfortable and safe where he is presently housed. Defendant's continued employment and his placement within the Department of Corrections would most likely be lost upon transfer back to Deschutes County Jail."

As noted, the state does not oppose the dismissal motion, but it has not filed a response explaining that position.

We begin our analysis by adding to *Moore*'s explanation of why such post-opinion dismissal motions are disfavored, even when unopposed.

First, it is important to understand what happens when we grant a post-opinion dismissal motion by the appellant. The effect on the appellant is return to a pre-appeal posture; from the appellant's perspective (at least, the appellant's legal perspective), it is just as though no appeal had

been taken. The trial court judgment stands, as though no notice of appeal had ever been filed. Yet our published opinion *also* stands, announcing the court's holding on the issues that the appellant raised on appeal (although it has no effect on the appellant). The opinion does not somehow become less precedential because we later granted the appellant's motion to dismiss.

That dual effect has important systemic implications. If we routinely granted post-opinion dismissal motions, it could encourage appellants to seek our resolution of open legal questions via published opinions—even though the appellants anticipate subsequently seeking post-opinion dismissal, meaning that they would not actually be affected by those judicial decisions. Put bluntly, clever litigants might utilize post-opinion dismissals to obtain what would, essentially, be advisory opinions from this court.

Second, and relatedly, routine post-opinion dismissal could inappropriately influence the decisions that an appellant makes during the early stages of the appellate process. The appellant must choose what issues to raise on appeal by assigning error to specific trial court rulings. Sometimes, the legal consequences of prevailing on an issue will clearly benefit the appellant, and little risk is involved in raising that issue. Sometimes, however, assigning error to a particular trial court ruling involves a significant risk because the legal consequences of winning may ultimately *not* benefit the appellant. For example, a defendant-appellant who assigns error to a sentencing ruling sometimes runs the risk that a remand for resentencing might result in "the imposition of a harsher sentence on remand following [the] appeal than that which was originally imposed." *State v. Worth*, 300 Or App 138, 140, 452 P3d 1041 (2019), *rev den*, 366 Or 451 (2020).

The time for appellants to assess whether such risks are worth taking—to perform the necessary cost-benefit analyses—is before they file their appellate briefs, preferably with able assistance of counsel. And, if an appellant has belated regrets about including a particular assignment of error in the opening brief (perhaps after reviewing the response brief, or after further contemplating the

implications of having made the argument), the appellant can withdraw that assignment from our consideration *before* we decide the case. Appellants should make those types of decisions as early as possible in the appellate process, not months or years later, after having prevailed in a published opinion and then deciding that, after all, winning was not worth it. If we routinely allowed appellants to redo the cost-benefit analysis *after* opinions issued, it could inappropriately lead appellants to take greater risks on appeal, believing that, if the result was not to their liking, they could avoid it through a post-opinion dismissal motion.

Third, dismissing an appeal after an opinion has issued can devalue the investments that the parties' lawyers and the court system have put into resolving the questions that the appellant has raised. As in this case, raising a particular issue—here, the merger question—requires lawyers to expend significant resources in briefing the issue and the appellate court to expend significant resources in resolving it. Again, if an appellant does not want this court to rule on the correctness of a particular trial court ruling, the appellant should either not assign error to that ruling, or should withdraw the associated assignment of error from the court's consideration before everybody involved has spent time and effort addressing it.[3]

In the end, an appellant who requests post-opinion dismissal is saying, "Never mind." Never mind the effort that the parties and their lawyers put into briefing the issues on appeal. Never mind the costs to the court system involved in addressing those issues in a published decision. Never mind the associated and ultimately unnecessary delay in resolving the appeal, which may affect not only the parties, but also other individuals, like the victims of a defendant-appellant's crimes. Never mind that, if an appellant decides at some point that it is no longer worth pursuing

---

[3] We understand that post-opinion dismissal may result in some cost savings to the parties, the court, and other involved institutions and individuals. For example, a post-opinion dismissal in an appeal that resulted in remand for resentencing allows all involved to avoid the costs associated with resentencing the defendant. In our view, however, those cost savings are outweighed by the case-specific and systemic costs that would result if we routinely granted post-opinion dismissal motions.

a particular argument, the appellant can easily withdraw that issue from the court's consideration before an opinion issues. Never mind the systemic implications of creating a system that would allow parties to request resolution of legal disputes by way of decisions that they do not actually intend to be affected by. But we do mind, and that is why we disfavor post-opinion dismissal motions, even when they are unopposed.

And yet. There are some cases in which the appellant presents compelling *practical* reasons for no longer wanting the relief that follows from having prevailed on appeal. Here, defendant explains that he will obtain no meaningful benefit from merger and resentencing, as the result will be little more than reduction of his criminal-history score (and he asserts no intention of having "future contact with the law" after he is released from prison in his early 60s) and almost certain imposition of the same 75-month term of incarceration on remand as he received initially. Defendant also avers that, if he is resentenced, he likely will lose his current employment and institutional placement within ODOC custody. Such practical considerations may be critically important to an appellant, and those considerations may not be as readily anticipated or understood at the outset of an appeal as they are once an opinion has issued.

Taking all of that into account, as well as the factors laid out in *Moore*, we conclude that we should consider at least the following case-specific matters when we exercise our discretion in ruling on future post-opinion dismissal motions, which remain generally disfavored for the institutional and systemic reasons discussed above:

1.  Whether any party or any victim of a defendant's crime has expressed reasoned opposition to the motion.

2.  Whether post-opinion dismissal could allow the appellant to escape possible adverse legal consequences of prevailing on an issue or issues that the appellant chose to raise on appeal.

3.  If so, whether those legal consequences were, or reasonably could have been, anticipated when the

appellant filed the opening brief or at any subsequent point before the court's opinion issued.

4.  Whether the appellant's decision to raise a particular issue on appeal was influenced by the possibility of subsequently filing a post-opinion dismissal motion if the appellant was dissatisfied with the court's resolution of that issue, or simply did not want the relief granted.

5.  The reasonableness and diligence of the parties in pursuing settlement.

6.  Whether the appellant has established compelling reasons for wishing to dismiss the appeal, particularly those associated with any practical consequences of the relief granted by the appellate court.

7.  The extent to which the appellant's expressed practical reasons for wishing to dismiss the appeal reasonably could have been anticipated and appreciated when the appellant filed the opening brief or at any subsequent point before the court's opinion issued.

We emphasize that we expect appellants seeking post-opinion dismissal to do just what the sixth point requires: to *establish* compelling reasons for dismissal. In this case and some others filed to date, the appellants' post-opinion dismissal motions have included only unsworn averments that the relief that the appellant has obtained on appeal will cause certain adverse practical consequences for the appellant (such as a claimed loss of employment, programming, or institutional placement within the ODOC system when a case is remanded for resentencing). Given the significant systemic implications of granting post-opinion dismissal motions, we expect more. In future cases, we are unlikely to grant such motions absent a more complete explanation of any claimed adverse practical consequences of the court's decision, supported when feasible by citation to legal authority, creation of an evidentiary record, or perhaps a jointly agreed statement of facts. And, whether or not a respondent opposes a post-opinion dismissal motion, we would benefit from an explanation of that position that

takes into account both any case-specific and any systemic considerations. To the extent that ODOC's interests may be implicated by such motions when they are filed in criminal or post-conviction appeals, we would welcome input from that institution as well.

In this case, as noted above, defendant's dismissal motion is supported only by unsworn and generalized assertions about the possible effects of a remand for merger and resentencing. Those assertions, which are unsupported by any evidence or citation to legal authority, do not present a sufficient justification for overriding the presumption against post-opinion dismissal. Accordingly, we deny the motion as currently presented. However, because defendant did not have the benefit of this decision when he filed his dismissal motion, we grant him leave to file a new dismissal motion (if he wishes to do so) addressing the matters set forth in this opinion.

Motion to dismiss appeal denied with leave to file a new motion to dismiss within 14 days of publication of this opinion.